IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

ROSELL ROMONT WOODSON,       )       CASE NO. 5:09CV2803
                             )
              Petitioner,    )
                             )
         v.                  )       JUDGE ADAMS
                             )
                             )       MAGISTRATE JUDGE VECCHIARELLI
KEITH SMITH, Warden,         )
                             )       **REPORT AND RECOMMENDATION**
              Respondent.    )

This matter is before the magistrate judge pursuant to Local Rule 72.2(b)(2).

Before the court is the petition of Rozell Romont Woodson ("Woodson") for a writ of

habeas corpus filed pursuant to 28 U.S.C. § 2254 on December 2, 2009.  Woodson is in

the custody of the Ohio Department of Rehabilitation and Correction pursuant to journal

entry of sentence in the case of *State of Ohio vs. Woodson*, Case No.2007 CR0070(B)

(Stark County 2007).  For the reasons set forth below, Woodson's petition should be

dismissed.

I.

The state appellate court reviewing Woodson's conviction found the following

facts to be relevant to his case:

> ¶ 2} In January 2007, the Stark County Grand Jury indicted appellant and his
> co-defendant George Taylor, on one count of trafficking in cocaine, one count of
> possession of cocaine, and one count of having weapons under disability.

{¶ 3} Before trial, appellant and co-defendant Taylor filed motions to suppress. Appellant's motion alleged that there was no lawful cause to detain, arrest, or search him or his vehicle, that the drug dog was not properly credentialed and did not give positive indicators, and that statements obtained from him were obtained in violation of his fifth, sixth and fourteenth amendment rights. The State presented three witnesses at the suppression hearing-Troopers Shawn Baskerville and Scott Louive of the Ohio State Highway Patrol and Officer Eric Haynam of the Jackson Township Police Department. Appellant and Taylor presented no evidence.

{¶ 4} At the evidentiary hearing on appellant's motion to suppress, the following facts were established:

{¶ 5} During the early morning hours of December 29, 2006, Trooper Shawn Baskerville was running radar on Interstate 77.  At approximately 3:49 a.m., a car driven by appellant passed the Trooper's location at 88 miles an hour.  Trooper Baskerville activated the cruiser's overhead lights and siren.  Appellant pulled over in response.  Trooper Baskerville approached the passenger side of the car and saw the co-defendant Taylor with a tray on his lap "busting the guts out of a cigar."  Because he received training in drug interdiction, Trooper Baskerville was aware that drug users would remove the tobacco and cardboard out of a cigar or "bust the guts" and replace it with marijuana.  Upon seeing what Taylor was doing, Trooper Baskerville read both Taylor and appellant the *Miranda* warnings. Trooper Baskerville then inquired if there was any marijuana in the car; both men denied having marijuana.  Trooper Baskerville did not see or smell marijuana.

{¶ 6} Trooper Baskerville then asked appellant for his driver's license, proof of insurance and registration.  Because appellant could not produce any of these items, Trooper Baskerville asked appellant to exit the car and take a seat in the back of his cruiser while he checked his information.

{¶ 7} Appellant told Trooper Baskerville that he was Lamar Moore and gave a Social Security number that matched that name as well as appellant's description with the exception of approximately two inches in height.  The car was a third party rental.  Appellant told Trooper Baskerville he was coming from Cleveland and was on his way to Mercy Medical Center because his girlfriend was giving birth.  When Trooper Baskerville told appellant that he was issuing a speeding ticket, appellant became angry and told Trooper Baskerville that he had given him the correct information.

{¶ 8} Trooper Baskerville left appellant seated in his cruiser while he returned to the car to question Taylor.  Taylor said he and appellant were coming from Akron.  After this conversation, based on his observation of Taylor's activity, the fact that the car was a third party rental, appellant's statement that he had provided the correct information, the overall nervousness of both men, and his

2

perception that they were being deceptive, Trooper Baskerville requested that dispatch send a narcotics-detection dog to the scene.

{¶ 9} Officer Eric Haynam, a Jackson Township officer and canine handler, arrived with canine officer "Lou" just before 4 a.m.  Trooper Baskerville explained to Officer Haynam that the car was a rental not registered to either appellant or Taylor, that the stories of the two men did not match, and that he suspected there were illegal substances in the car.  Officer Haynam directed Trooper Baskerville to remove Taylor from the car.  He then began walking Lou around the parameter of the car.  Lou alerted at the driver side door by scratching at the door.  Officer Haynam went to the passenger side door away from traffic, opened the door, and released Lou inside.  Lou went immediately to the center console of the car and aggressively alerted by scratching on the console.  Officer Haynam advised Trooper Baskerville of Lou's indication, and returned Lou to his cruiser.

{¶ 10} Officer Haynam then stood with Taylor while Trooper Baskerville searched the car.  In the center console, Trooper Baskerville found a 9-millimeter handgun and a plastic bag containing several other plastic bags, each containing crack cocaine.  Another handgun, a .380 automatic, was located under the driver's seat.  Upon finding the first weapon, Trooper Baskerville advised Officer Haynam to pat down Taylor for his safety.  Taylor told Officer Haynam he had marijuana in his waistband.

{¶ 11} While Trooper Baskerville was searching the car, the cruiser video recorded appellant talking on his cell phone in the rear of the cruiser.  He told an unidentified female that the officers had found the drugs and the gun.  He then told her to report the car stolen.

{¶ 12} Trooper Scott Louive arrived to assist Trooper Baskerville and transported Taylor to the Stark County jail.  At the jail, Taylor told Trooper Louvie that he knew there was a gun and crack cocaine in the car.  He then asked if it would help him to reduce his charges if he admitted the gun was his and that he knew about the crack.  Trooper Louive told Taylor he could not answer that question.

{¶ 13} After the evidentiary hearing, the motion to suppress was overruled.  The trial court found that Trooper Baskerville had probable cause to stop appellant on a traffic violation, that he then observed activity upon making the stop, the totality of which gave Trooper Baskerville probable cause to search the car and appellant.  Further, the court found that the statements made by appellant and Taylor were unsolicited and thus admissible.

{¶ 14} Taylor pled guilty as charged.  Appellant's case proceeded to jury trial. At trial, the State presented five witnesses.  Appellant did not present any evidence.

{¶ 15} Appellant was found guilty as charged.  He was sentenced to ten years on

3

each drug offense, to be served concurrently, and five years for having weapons under disability, to be served consecutive to the drug charges.  Additionally, the court imposed the balance of appellant's post-release control time, two years and 144 days, to be served consecutive to the drug and weapons sentences.

*State v. Woodson*, 2008 WL 442569, at *1-*3 (Ohio App. Feb. 19, 2008).

Woodson, represented by new counsel, timely appealed his conviction to Ohio's

Fifth District Court of Appeals.   He raised one assignment of error in his appeal:

Assignment of Error No. I

The trial court erred when it denied appellant's motion to suppress the evidence that was obtained as a result of the search conducted on the vehicle that was unlawfully detained after the driver's background information cleared and the citation had been completed.

On February 19, 2008, the state appellate court overruled Woodson's assignment of

error and affirmed the judgment of the trial court.

Woodson timely appealed the appellate court's decision to the Ohio Supreme

Court.  In his memorandum in support of jurisdiction, Woodson asserted one proposition

of law:

Proposition of Law No. I:  The trial court erred when it denied Appellant's Motion to Suppress evidence that was obtained as a result of the search conducted on the vehicle that was unlawfully detained after the driver's background information cleared and the citation had been completed.

On June 9, 2008, the Ohio Supreme Court denied Woodson leave to appeal and

dismissed his appeal as not involving any substantial constitutional question.

During the pendency of Woodson's direct appeal, on May 9, 2008, Woodson filed

in the state appellate court an application to reopen his direct appeal pursuant to Ohio

App. R. 26(B).  Woodson alleged that appellate counsel had been ineffective for failing

to raise the following claims on direct appeal:

4

A. The Appellant's Jury Verdict Forms are not compliant with R.C. 2945.75 or Supreme Court of Ohio case *State v. Pelfrey*; therefore, the Appellant's conviction and sentences are void.

B. The Appellant's right to due process and right to be free from double jeopardy was violated when he was convicted of Possession of drugs, as defined by R.C. 2925.11(A), and Drug Trafficking, under R.C. 2925.03(A)(2), because the two offenses are allied offenses of similar import; and a defendant cannot be convicted of both if the charges originate from the same conduct, R.C. 2941.25(A)(B).

C. The Appellant's right to Equal Protection and Due Process per Ohio's and the United States' Constitution were violated when he convicted [sic] of a higher level felonies [sic] and received a much harsher sentences [sic] because the drug in issue was crack cocaine rather than powder cocaine.  According to the United States Supreme Court in *Kimbrough v. U.S.*, the belief that crack cocaine is a much more harmful drug than powder cocaine is no longer supported by scientific evidence.

D. The trial court erred in denying the Appellant's Motion for Rule 29 acquittal because insufficient evidence was presented at trial to prove beyond a reasonable doubt that the Appellant committed the crimes of which he was convicted. The Appellant was denied effective assistance of trial counsel when trial counsel failed to raise an objection to an unlawful conviction and sentence, thus abrogating that defendant's right to properly raise that issues [sic] on appeal.

E. The trial court erred in sentencing Appellant's remainder of the Post Release Control time [sic] for three reasons: 1) the Appellant was not properly informed that he would be subjected to Post Release Control in his 1998 (1998 CR 0347B) case; 2) if trial court properly sentenced the Appellant to the remainder of his Post Release Control time, he can only be sentenced to a maximum 90 days on any violation; and, 3) the trial court does not have the discretion to sentence the Appellant to two years and 144 days on the Appellant's alleged remaining Post Release Control.

F. A defendant is denied effective assistance of trial counsel when trial counsel fails to raise an objection to an illegal conviction and sentence, thus abrogating that defendant's right to properly raise that issue on appeal.

(Capitalization in the original.)  On July 14, 2008, the state appellate court denied

Woodson's application to reopen, as Woodson had failed to raise a genuine issue in his

application.

5

Woodson timely filed a notice of appeal of the denial of his application to reopen in the Ohio Supreme Court.  In his memorandum in support of jurisdiction, Woodson asserted six propositions of law:

Proposition of Law No. I:  When the jury forms at the appellant's trial are not compliant with R.C. 2945.75, or [the] Ohio Supreme Court procedural holding in State v. Pelfrey, supra, his convictions and sentence are void due to due process violations of the U.S. Constitutions.

Proposition of Law No. II:  When the Appellant's right to due process and to be free from double jeopardy [were] violated when he was convicted of both Trafficking of Drugs, R.C. 2925.03(A)(2), and Possession of Drugs, R.C. 2925.11, because the two offenses are allied offenses of similar import, a defendant cannot be convicted of both charges originating from the same conduct. R.C. 2941.25, the convictions are void.

Proposition of Law No. III:  When the Appellant's right to equal protection and due process per Ohio and U.S. Constitutions are violated when he was convicted of a higher levels of felonies [sic] and received harsher sentences because the drug at issue was crack cocaine rather than powder cocaine, according to Kimbrough v. U.S., the belief that crack cocaine is a more harmful drug than powder cocaine is no longer supported by evidence of a scientific level of certainty.

Proposition of Law No. IV:  The defendant was convicted with insufficient evidence, and the trial court erroneously denied defendant's Rule 29 motion, and counsel failed to object to an unlawful sentence.  The defendant was denied his Sixth and Fourteenth Amendment rights under U.S. Constitution.

Proposition of Law No. V:  The trial court erred and imposed the remainder of the defendant's P.R.C. time from a prior conviction, violating due process prohibition [against] retroactive laws and violating [the] ex post facto clause.

Proposition of Law No. VI:  The defendant was denied effective assistance of trial counsel.

(Capitalization, punctuation, and spelling altered from the original.)  On December 8, 2008, the Ohio Supreme Court dismissed Woodson's appeal as not involving any substantial constitutional question.

Woodson filed a petition for a federal writ of habeas corpus in this court on

6

December 2, 2009.  Woodson asserts six grounds for relief in his petition:

> Ground One:  The Ohio courts ruled contrary to or unreasonably applied U.S.
> Supreme Court Fourth Amendment case law when denying Mr. Woodson's
> meritorious motion to suppress on the grounds that the car was unlawfully
> detained.
>
> Ground Two:  The Ohio courts ruled contrary to or unreasonably applied U.S.
> Supreme Court case law in finding that although Mr. Woodson was convicted
> and sentenced of allied offenses of similar import, his trial and appellate counsel
> were not prejudicially ineffective for failing to raise and then appeal the issue on
> direct appeal.
>
> Ground Three:  The Ohio courts ruled contrary to or unreasonably applied U.S.
> Supreme Court case law in finding that evidence was sufficient to support the
> three convictions and finding that Mr. Woodson's trial and appellate counsel were
> not prejudicially ineffective for failing to raise and then appeal the issue on direct
> appeal.
>
> Ground Four:  The Ohio courts ruled contrary to or unreasonably applied U.S.
> Supreme Court case law in finding that Mr. Woodson was not unconstitutionally
> convicted and sentenced, and finding that Mr. Woodson's his [sic] trial and
> appellate counsel were not prejudicially ineffective for failing to raise and then
> appeal the issue on direct appeal.
>
> Ground Five:  The Ohio courts ruled contrary to, or unreasonably applied, U.S.
> Supreme Court case law when denying Mr. Woodson's arguments that the jury
> verdict forms were constitutionally insufficient for failing to state each element of
> the offense and when finding that his trial and appellate counsel were not
> prejudicially ineffective for failing to raise and directly appeal the constitutional
> errors:
>
> Ground Six:  The Ohio courts ruled contrary to, or unreasonably applied, U.S.
> Supreme Court case law when denying Mr. Woodson's arguments that the trial
> court had erred in sentencing him to the remainder of his post-release control
> from a prior conviction and when finding that his trial and appellate counsel were
> not prejudicially ineffective for failing to raise and directly appeal the
> constitutional errors.

Respondent filed an Answer/Return of Writ on March 23, 2010.  Doc. No. 6.  Woodson

filed a Traverse on April 19, 2010.  Doc. No. 8.  Thus, the petition is ready for decision.

II

*A.  Jurisdiction*

The Court of Common Pleas of Stark County, Ohio sentenced Woodson.

Woodson filed his writ of habeas corpus in the Northern District of Ohio and raises

claims regarding the constitutionality of his incarceration under 28 U.S.C. § 2254.

> Writs of habeas corpus may be granted by the Supreme Court, any justice
> thereof, the district courts and any circuit judge within their respective
> jurisdictions. . . . Where an application for a writ of habeas corpus is made by a
> person in custody under the judgment and sentence of a State court of a State
> which contains two or more Federal judicial districts, the application may be filed
> in the district court for the district wherein such person is in custody or in the
> district court for the district within which the State court was held which convicted
> and sentenced him and each of such district courts shall have concurrent
> jurisdiction to entertain the application.

28 U.S.C. § 2241(a ) & (d).  Stark County is within this court's geographic jurisdiction.

This court has jurisdiction over Woodson' petition.

*B.    Evidentiary hearing*

The habeas corpus statute authorizes an evidentiary hearing in limited

circumstances when the factual basis of a claim has not been adequately developed in

state court proceedings.  28 U.S.C. § 2254(e)(2).  There is no need for an evidentiary

hearing in the instant case.  All of Woodson's claims involve legal issues which can be

independently resolved without additional factual inquiry.

*C.    Exhaustion of state remedies*

A state prisoner must exhaust all available state remedies or have no remaining

state remedies available prior to seeking review of a conviction via federal habeas

corpus.  28 U.S.C. § 2254(b) and (c); *Castillo v. Peoples*, 489 U.S. 346, 349 (1989);

*Riggins v. Macklin*, 936 F.2d 790, 793 (6th Cir. 1991).  If any state procedures for relief

8

remain available, the petitioner has not exhausted state remedies.  *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).

A petitioner must fairly present any claims to the state courts in a constitutional context properly to exhaust state remedies.  *Anderson v. Harless*, 489 U.S. 4 (1982); *Picard v. Connor*, 404 U.S. 270 (1971); *Shoultes v. Laidlaw*, 886 F.2d 114, 117 (6th Cir. 1989).  "[O]nce the federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied."  *Picard*, 404 U.S. at 275; *see also Harris v. Reeves*, 794 F.2d 1168. 1174 (6th Cir. 1986).  The exhaustion requirement is properly satisfied when the highest court in the state in which petitioner was convicted has been given a full and fair opportunity to rule on all the petitioner's claims.  *Manning v. Alexander*, 912 F.2d 878, 881-83 (6th Cir. 1990).

The requirement that petitioners exhaust state remedies is a matter of comity between the federal government and the states:

> The exhaustion doctrine is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings. . . . Because "it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation," federal courts apply the doctrine of comity, which "teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter."

*Rose v. Lundy*, 455 U.S. 509, 518 (1982) (quoting *Darr v. Burford*, 339 U.S. 200, 204 (1950)) (other citations omitted).  Because exhaustion is a matter of comity, a petition containing unexhausted claims may be denied on the merits.  28 U.S.C. § 2254(b)(2).

Woodson has no state remedies available for his claims.  Because no state remedies remain available to him, Woodson has exhausted state remedies.

9

D.    *Procedural default*

Reasons of federalism and comity generally bar federal habeas corpus review of "contentions of federal law . . .  not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure." *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).  When a petitioner

> has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  Procedural default occurs when a petitioner fails to present fairly to the highest state court his claims in a federal constitutional context.  *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999); *Anderson v. Harless*,  459 U.S. 4 (1982).  Moreover, a failure to present a claim to the highest court in the state deprives a federal court hearing a habeas petition of jurisdiction on that issue.  *See McKeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).

If the state argues that a petitioner has procedurally defaulted his claims, the court must conduct a four-step analysis to determine whether the petitioner has indeed defaulted and, if so, whether the procedural default may be excused:

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. . . . Second, the court must decide whether the state courts actually enforced the state procedural sanction.  . . . Third, the court must decide whether the state procedural forfeiture is an  "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim. . . . This question generally will involve an examination of the legitimate state interests behind the procedural rule in light of the federal interest in considering federal claims. . . . [Fourth, if] the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate . . . that there was "cause" for him

10

to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  A default will also be excused if petitioner demonstrates that not excusing the default "will result in a fundamental miscarriage of justice."  *Coleman*, 501 U.S. at 750.

Respondent contends that Woodson has defaulted his second, third, fourth, fifth, and sixth grounds for relief because he failed to raise them on direct appeal.  Woodson acknowledges these defaults, but he cites ineffective assistance of appellate counsel, and, in some cases, trial counsel, as cause for the defaults and claims that he was prejudiced by that allegedly ineffective assistance.  The court shall examine, therefore, whether ineffective assistance of appellate counsel or trial counsel may serve as cause to excuse Woodson's procedural defaults.

A petitioner must present a claim of ineffective assistance of counsel to the state courts as an independent claim before it may serve as cause for a procedural default.  *Scuba v. Brigano*, 527 F.3d 479, 487 (6th Cir. 2007) (citing *Murray v. Carrier,* 477 U.S. 478, 488-89 (1986)).  In this case, Woodson presented timely and as an independent claim in the state courts his assertion that appellate counsel had been ineffective for failing to assert on direct appeal the errors alleged in ground three of his habeas petition.  He presented this claim to both the state appellate court and the Ohio Supreme Court.  Woodson failed to present to the state courts, however, the claims of ineffective assistance of counsel for failing to assert the claims in part of ground two and all of grounds five and six of his habeas petition.  Part of ground two and all of grounds

11

five and six assert ineffective assistance for failing to assert *federal* claims.[1]  The related claims asserted in state court alleged ineffective assistance for failing to raise *state* claims.  Consequently, these claims of ineffective assistance of counsel were procedurally defaulted.  As respondent fails to assert these defaults, however, the court will consider all of Woodson's claims of ineffective assistance of counsel as cause for Woodson's procedural defaults.

Defendants have a right to appointed counsel for the first appeal of right.  *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987).  An appellant has no constitutional right to have every nonfrivolous issue raised on appeal, *Jones v. Barnes*, 463 U.S. 745, 750-54 (1983), and tactical choices regarding issues on appeal are properly left to the sound judgment of counsel.  *United States v. Perry*, 908 F.2d 56, 59 (6th Cir.), *cert. denied*, 498 U.S. 1002 (1990).  The standard enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984),  is applicable to claims of ineffective assistance of appellate counsel.  *See Bowen v. Foltz*, 763 F.2d 191, 194 n.4 (6th Cir. 1985).

Petitioner's counsel was ineffective if "counsel's conduct so undermined the proper functioning of the adversarial process that the [process] cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686; *see also Groseclose v. Bell*, 130 F.3d 1161, 1167 (6th Cir. 1997).  A claim of ineffective assistance of counsel has two components:

First, the defendant must show that counsel's performance was deficient. This

---

[1]  Woodson raised in state court a claim of ineffective assistance of counsel for failing to raise the *state* claim described in ground two of his habeas petition.  He did not, however, assert ineffective assistance for failing to raise the federal Double Jeopardy claim described in ground two.

12

requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland*, 466 U.S. at 687; *see also* *Groseclose*, 130 F.3d at 1167.

The first prong of this test, the showing of deficient performance, is an objective one: "[T]he proper standard for attorney performance is that of reasonably effective assistance. . . . When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness," as judged by "prevailing professional norms." *Strickland*, 466 U.S. 687-88; *see also* *Groseclose*, 130 F.3d at 1167.  Scrutiny of counsel's performance is highly deferential to avoid second-guessing an adverse decision.  *Strickland*, 466 U.S. at 689; *see also* *Groseclose*, 130 F.3d at 1167.  The petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also* *Groseclose*, 130 F.3d at 1167.  A court reviewing counsel's performance "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 690.  "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . ." *Id.* at 690-91 (1984); *see also* *Groseclose*, 130 F.3d at 1167-6.

The second prong of the test for ineffective assistance of counsel is whether the

error prejudiced petitioner:

> An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.  The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding. Accordingly, any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution.

*Strickland*, 466 U.S. at 690-91 (citations omitted); *see also* *Groseclose*, 130 F.3d at 1168.  Further "the burden rests on the accused to demonstrate a constitutional violation." *United States v. Cronic*, 466 U.S. 648, 658 (1984).  Showing a constitutional violation requires showing that "counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." *Nix v. Whiteside*, 475 U.S. 157, 175 (1986).  "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).  A reviewing court must ask itself "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Strickland*, 466 U.S. at 695; *see also* *Groseclose*, 130 F.3d at 1168.

Determining whether counsel was ineffective is a mixed question of law and fact. *See* *Williams v. Taylor*, 529 U.S. 362 (2000).  When a federal court reviews the conclusions of a state court regarding counsel's alleged ineffectiveness, both the legal and the factual tests for determining whether habeas relief is warranted are brought into play. *Id.* at 395-96.  That is, the reviewing court must determine whether the decision of the state court regarding counsel's alleged ineffectiveness (1) was based on an

unreasonable determination of the facts in light of the evidence presented in the State court proceeding and (2) resulted in a decision that was contrary to or involved an unreasonable application of a holding of the Supreme Court.  *Id.*  There are two ways in which a state court decision may involve an unreasonable application of a holding of the Supreme Court:

> First, a state-court decision involves an unreasonable application of this Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case.  Second, a state-court decision also involves an unreasonable application of this Court's precedent if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

*Id.* at 407.  The court shall review each of the grounds for relief that respondent claims were procedurally defaulted to determine if appellate counsel or trial counsel rendered ineffective assistance by failing to assert that claim timely.

  1. *Ineffective assistance of counsel as cause for Woodson's procedural default of his second ground for relief*

  Woodson asserts in his second ground for relief that his trial counsel was ineffective for failing to assert that possession of a controlled substance and trafficking that same substance were allied offenses of similar import and violated the Constitution's Double Jeopardy Clause.  Consequently, Woodson argues that he should not have been convicted of both crimes or his sentences for those crimes should have been merged.  He also asserts that appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness in this respect.

  At the time of Woodson's conviction, sentence, and appeal, neither the Ohio Supreme Court nor the Ohio's Fifth District Court of Appeals, had ruled regarding

whether possession of a drug and trafficking that same drug were allied offenses of similar import.  Of Ohio's twelve appellate courts, six had ruled that the two offenses were not allied offenses of similar import,[2] and only one had ruled that they were.[3]  On April 9, 2008, the Ohio Supreme Court ruled that drug trafficking and possession were allied offenses of similar import and that sentences for those offenses, unless marked by a separate animus for each offense, should be merged.  *State v. Cabrales*, 118 Ohio St. 3d 54, 55, 886 N.E.2d 181, 183 (2008).

Woodson's appellate counsel filed his appellate brief on September 25, 2007. The great weight of legal opinion in Ohio at that time was that possession of drugs and trafficking of drugs were not allied offenses of similar import.  Consequently, neither the trial counsel's performance nor appellate counsel's performance fell below an objective standard of reasonableness as judged by the prevailing professional norms at the time of Woodson's appeal.  For this reason, neither trial counsel nor appellate counsel were ineffective for failing to argue that Woodson was separately convicted and sentenced of two allied offenses of similar import.

Woodson also argues that his trial and his appellate counsel were ineffective for failing to argue that his convictions for drug possession and drug trafficking violated the

---

[2]  *State v. McGhee*, No. 04CA15 (Ohio 4th App. Dist. 2005); *State v. Moore*, No. E-03-006 (Ohio 6th App. Dist. 2004); *State v. Bridge*s, No. 80171 (Ohio 8th App. Dist.2002); *State v. Pena*, No. 03AP-174 (Ohio 10th App. Dist. 2004); *State v. Greitzer*, No. 2003-P-0110 (Ohio 11th App. Dist. 2005); *State v. Alvarez*, No. 2003-P-011 (Ohio 12th App. Dis. 2004).  In addition, respondent notes that *State v. Conley*, No. 9-04-34 (Ohio 3d App. Dist. 2007), and *State v. Simmons*, No. 06 JE 4 (Ohio 7th App. Dist. 200), had held that the sale of drugs as prohibited by Ohio Rev. Code §2925.03(A)(1) and possession of drugs were not allied offenses of similar import.

[3]  *State v. Cabrales*,  No. C-050682 (Ohio 1st App. Dist. 2007).

16

Double Jeopardy Clause.  The court need not decide whether the performance of trial and appellate counsel fell below an objective standard of reasonableness for failing to raise the issue of Double Jeopardy because even if Woodson is correct, he is unable to show that he was prejudiced by counsels' failures.  According to the Supreme Court:

> The Double Jeopardy Clause . . . protects against multiple punishments for the same offense.  Where consecutive sentences are imposed at a single criminal trial, the role of the constitutional guarantee is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense.

*Brown*, 432 U.S. at 166 (citations omitted).  Woodson was convicted of multiple offenses in violation of the Double Jeopardy Clause.  The trial court sentenced him, however, to concurrent sentences, not consecutive sentences.  The Double Jeopardy Clause offers no relief in the case of concurrent sentences.  Woodson fails to demonstrate, therefore, how he was prejudiced by his trial counsel's and appellate counsel's alleged ineffective assistance.  Consequently, Woodson is unable to demonstrate cause and prejudice for counsels' failure to assert error based on a violation of the Double Jeopardy Clause.

> 2.  *Ineffective assistance of counsel as cause for Woodson's procedural default of his third ground for relief*

Woodson asserts in his third ground for relief that the evidence was insufficient to support his convictions, that trial counsel was ineffective for failing to assert this claim, and that appellate counsel was ineffective for failing to claim that trial counsel had been ineffective in this respect.  Respondent denies that the evidence was insufficient to support Woodson's convictions or that trial or appellate counsel was ineffective.

A petitioner who claims that the evidence at trial was insufficient for a conviction

must demonstrate that after viewing the evidence in the light most favorable to the prosecution no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319 (1979); Scott v. Mitchell, 209 F.3d 854, 885 (6th Cir. 2000).  This is the standard whether the evidence against the petitioner is direct or circumstantial.  Spalla v. Foltz, 788 F.2d 400, 402 (6th Cir. 1986).  It is not necessary that the evidence exclude every reasonable hypothesis except that of guilt. Holland v. United States, 348 U.S. 121, 140 (1954).

> The role of the reviewing court in considering such a claim is limited:
>
> A reviewing court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court.  Marshall v. Lonberger, 459 U.S. 422, 434 (1983).  It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony.  Neal v. Morris, 972 F.2d 675, 679 (6th Cir. 1992).  An assessment of the credibility of witnesses is generally beyond the scope of federal habeas review of sufficiency of evidence claims.  Gall v. Parker, 231 F.3d 265, 286 (6th Cir. 2000).  The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim.  Ibid.

Matthews v. Abramajtys, 319 F.3d 780, 788-89 (6th Cir. 2003).  "[A]ttacks on witness credibility are simply challenges to the quality of the government's evidence and not to the sufficiency of the evidence."  Martin v. Mitchell, 280 F.3d 594, 618 (6th Cir. 2002) (quoting United States v. Adamo, 742 F.2d 927, 935 (6th Cir.1984)).

Woodson argues that the state appellate court stated that the following evidence adduced at trial was sufficient to support Woodson's convictions for drug trafficking, possession, and having a weapon while under a disability:[4]  "[T]he cruiser video

---

[4]    Below are the elements of each of the offenses of which Woodson was convicted.

Trafficking in Cocaine pursuant to Ohio Rev. Code § 2925.03(A)(2), and (C)(4)(f):

(A) No person shall knowingly do any of the following: . . .
(2) Prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance, when the offender knows or has reasonable cause to believe that the controlled substance is intended for sale or resale by the offender or another person. . . .

(C) Whoever violates division (A) of this section is guilty of one of the following: . . .
(4) If the drug involved in the violation is cocaine or a compound, mixture, preparation, or substance containing cocaine, whoever violates division (A) of this section is guilty of trafficking in cocaine. The penalty for the offense shall be determined as follows: . . .
(f) If the amount of the drug involved equals or exceeds five hundred grams but is less than one thousand grams of cocaine that is not crack cocaine or equals or exceeds twenty-five grams but is less than one hundred grams of crack cocaine and regardless of whether the offense was committed in the vicinity of a school or in the vicinity of a juvenile, trafficking in cocaine is a felony of the first degree, and the court shall impose as a mandatory prison term one of the prison terms prescribed for a felony of the first degree

Possession of Cocaine pursuant to Ohio Rev. Code § 2925.11(A),(C)(4)(e):

(A) No person shall knowingly obtain, possess, or use a controlled substance. . . .

(C) Whoever violates division (A) of this section is guilty of one of the following: . . .
(4) If the drug involved in the violation is cocaine or a compound, mixture, preparation, or substance containing cocaine, whoever violates division (A) of this section is guilty of possession of cocaine. The penalty for the offense shall be determined as follows:
(e) If the amount of the drug involved equals or exceeds five hundred grams but is less than one thousand grams of cocaine that is not crack cocaine or equals or exceeds twenty-five grams but is less than one hundred grams of crack cocaine, possession of cocaine is a felony of the first degree, and the court shall impose as a mandatory prison term one of the prison terms prescribed for a felony of the first degree.

Having Weapons While Under Disability pursuant to Ohio Rev. Code § 2923.13(A)(2) or (A)(3):

(A) Unless relieved from disability as provided in section 2923.14 of the Revised Code, no person shall knowingly acquire, have, carry, or use any firearm or

19

recorded appellate [sic] talking on his cell phone in the rear of the cruiser.  He told an

unidentified female that the officers had found the drugs and the gun.  He then told her

to report the car stolen."  Woodson's argument, however, misrepresents the evidence

presented at trial.

Respondent argues as follows in support of his contention that the evidence

offered at trial was sufficient to support Woodson's convictions:

> It is unclear on what grounds Woodson believes that insufficient evidence
> was presented, as he does not clarify in his Petition, nor in his Rule 26(B)
> Application.  Nonetheless, sufficient evidence was presented that he was
> delivering or transporting cocaine for the purpose of sale.  The evidence revealed
> an expensive amount of crack was found in Woodson's car, far more than normal
> for personal use.  It was placed in several bags.  His conversation on the phone
> reveals that he knew he was carrying the drugs.  Possession was also proved.
> Respondent notes that under Ohio law, possession can either be actual or
> constructive . . . Therefore, even if the crack was not found on Woodson's
> person, it was certainly under his control in the vehicle, and his conversation on
> the phone provides evidence of his familiarity with its presence.  The same
> applies to firearm.  The state appellate court cited to the U.S. Supreme Court's
> decision in *Ulster County Court v. Allen*, 442 U.S. 140 (1979), in which three co-
> defendants could all be constitutionally convicted of illegal possession of
> handguns, based on a statutory presumption of possession that all occupants of
> a car possess a handgun found in it, even when the handguns were found in one
> of the occupant's claimed handbag on the floor of the car.
>     Given the damaging evidence provided by the finding of the large amount
> of crack cocaine, the gun, and the videotaped conversation, a rational jury,
> viewing the evidence in the light most favorable to the prosecution, could have
> convicted Woodson beyond a reasonable doubt.  Thus appellate counsel was not
> ineffective for not raising an issue that had no reasonable probability of success.

---

dangerous ordnance, if any of the following apply: . . .
(2) The person is under indictment for or has been convicted of any felony
offense of violence . . .
(3) The person is under indictment for or has been convicted of any offense
involving the illegal possession, use, sale, administration, distribution, or
trafficking in any drug of abuse . . . .

20

Answer at 26-30 (footnote omitted).[5]

As respondent notes, there was sufficient evidence presented at trial to allow a reasonable jury to find that Woodson knowingly transported a controlled substance in an amount greater than 25 grams,[6] knowing that was intended for sale.  This was sufficient to support convictions for drug possession or drug trafficking.  Similarly, given Woodson's stipulation that he had previously been convicted of a prior felony offense of violence and given that the prosecution also presented sufficient evidence to allow a reasonable jury to conclude that Woodson was in constructive possession of the cocaine and one or more of the firearms found in the car, there was sufficient evidence to support a conviction for having a weapon while under a disability.  As there was sufficient evidence to support Woodson's convictions, trial counsel was not ineffective for failing to argue that the evidence was insufficient to support his convictions, nor was appellate counsel ineffective for failing to argue that trial counsel had been ineffective in that respect.[7]  Consequently, as neither counsel was ineffective with regard to claims of insufficiency of the evidence, Woodson has failed to show cause for his procedural default of his third ground for relief.

   3.    *Ineffective assistance of counsel as cause for Woodson's procedural*

---

[5] The trial testimony of Barksdale supports respondent's summary of the evidence adduced at trial.  *See* Tr. at 150-57, 172-89.

[6] Tests at the Crime Lab for the Ohio State Highway Patrol identified the drugs in question as being between 29.25 grams and 31.63 grams of crack cocaine.  *See* Tr. at 130, 134-35.

[7] Moreover, respondent notes, "[D]espite Woodson's claim, trial counsel did preserve the issue for appeal by entering a Ohio Rule 29 Motion to Dismiss at the close of the State's case (Tr. Vol. I, p. 250)."

*default of his fourth ground for relief*

Woodson contends in his fourth ground for relief that trial counsel was ineffective for failing to argue that Woodson's sentence for trafficking and possession of crack cocaine was impermissibly disparate to the sentence he would have received had the controlled substance been powder cocaine.  Woodson also contends that his appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness in this respect. Respondent replies that Woodson's sentences were permitted by state law.

Woodson, who is represented by counsel in these habeas proceedings, offers no arguments or evidence to support the fourth ground for relief.  Woodson has failed to show, therefore, cause for his procedural default of his fourth ground for relief.

4.      *Ineffective assistance of counsel as cause for Woodson's procedural default of his fifth ground for relief*

In his fifth ground for relief, Woodson asserts that trial counsel was ineffective for failing to argue that the jury verdict forms violated Supreme Court caselaw because they failed to state every element of the offense.  He also contends that appellate counsel was ineffective for failing to claim that trial counsel had been ineffective in this respect. Woodson offers no arguments or evidence to support his fifth ground for relief.

Respondent replies that as the jury forms were consistent with state law, any claim of ineffective assistance of counsel based on a failure to challenge those forms is without merit.  Respondent does not otherwise address Woodson's claims.

Woodson's contention that Supreme Court precedent requires verdict forms to include every element of the offense of which a defendant is accused is without merit. The Supreme Court has held that criminal verdict forms may not coerce jurors into

22

reaching a particular opinion, may not misstate the law, may not be unconstitutionally ambiguous, may not require unanimity before finding mitigating circumstances in death penalty cases, must include within their scope all factual findings necessary to support the sentence imposed (such as aggravating circumstances), and must not mislead jurors into failing to consider factors which might ameliorate the sentence imposed.[8] The Supreme Court has never held, however, that verdict forms must list every element of the offense of which the defendant is accused.  As Woodson's contention is erroneous, trial counsel was not ineffective for failing to raise this claim, and appellate counsel was not ineffective for failing to assert that trial counsel was ineffective in this respect.  Woodson has failed to show cause for his procedural default of his fifth ground for relief.

5.      *Ineffective assistance of counsel as cause for Woodson's procedural default of his his sixth ground for relief*

Woodson contends in his sixth ground for relief that trial counsel was ineffective for failing to argue that his sentence subjecting him to the remainder of his post-release control from a prior conviction violated Supreme Court caselaw.  He also contends that appellate counsel was ineffective for failing to raise on appeal a claim of ineffective

---

[8]      *See Jenkins v. United States*, 380 U.S. 445 (1965) *(per curiam)* (holding that a court may not coerce jurors into reaching a particular verdict); *Stromburg v. California*, 283 U.S. 359 (1931) (holding that a verdict form may not misstate the law); *Boyde v. California*, 494 U.S. 370, 380 (1990) (holding that a verdict form may not create a reasonable likelihood that the jury applies the court's instruction in a way that prevents the consideration of constitutionally relevant evidence); *Mills v. Maryland*, 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988) (holding that sentencing schemes my not require jurors to consider only those mitigating circumstances found unanimously by the jury); and *Tennard v. Dretke*, 542 U.S. 274, 281 (2004) (holding that jurors may not constitutionally be prevented during sentencing from considering and giving effect to all relevant mitigating circumstances).

assistance of trial counsel in this respect.  In particular, Woodson raises the following

objections to his sentencing:

> (1) Mr. Woodson was never informed that he would be subject to post-release
> control in his 1998CR0347B case, (2) the trial court failed to verify that he was
> properly notified that he would be subject to post-release control and the
> consequences of violating post-release control, (3) Mr. Woodson was never
> advised that he would be subject to additional and consecutive time in prison if
> convicted of an additional offense while on post-release control, and (4) the trial
> court improperly sentenced him to the remainder of his post-release control
> rather than 90 days in prison.  Mr. Woodson's trial and appellate counsel did not
> raise these issues.

Petition at 17-18.  Woodson makes no arguments and presents no evidence in support

of these assertions.

The state appellate court that denied Woodson's application to reopen his direct

appeal pursuant to R. 26(B) made the following findings of fact and law in response to

the arguments described above:

> Appellant pled as charged in case number 1998CR0347B.  He signed a written
> plea of guilty, which was filed with his sentencing journal entry June 3, 1998.  In
> that document, appellant acknowledged that he was advised by his attorney and
> the court that 1). he was subject to a mandatory post release control after his
> release from prison for a maximum term of five years; 2) that should he commit
> another felony while under supervision he may be subject to an additional prison
> term of, not 90 days as he asserts, but rather the maximum period of unserved
> time remaining on post release control or 12 months, whichever is greater and 3)
> that this time must be served consecutively to the new felony.  Appellant signed
> the plea in open court acknowledging that he understood its terms.  Moreover,
> the trial court in the case at bar did not fail to verify that appellant had properly
> been informed of the consequences of violating post release control because
> appellant's written plea of guilty in the 1998 case was filed with the State's
> discovery in the instant case.  Because the record reflects that appellant was
> properly informed of his post-release control obligations and consequences, and
> was sentenced to the appropriate amount of time we find that this issue raises
> "no genuine issue as to whether [he] was deprived of the effective assistance of
> counsel on appeal* * * " *State v. Smith* 95 Ohio St.3d 127, 2002-Ohio-1753.

*State v. Woodson*, 2008 WL 2790025, at *6 (Ohio App. July 14, 2008).

24

Respondent's answer quotes the state appellate court's findings regarding Woodson's sixth ground for relief.  Woodson's traverse does not challenge the state appellate court's factual or legal findings.  Consequently, Woodson has not demonstrated that trial counsel was ineffective for failing to argue that his sentence arising out of post-release control from a prior conviction violated Supreme Court caselaw or that appellate and trial counsel were ineffective for failing to raise this issue. For this reason, Woodson has failed to show cause for his default of his sixth ground for relief.

Woodson fails to demonstrate that ineffective assistance of trial counsel or appellate counsel were cause for his default of his second through sixth grounds for relief or that he was prejudiced by the alleged ineffective assistance.  Consequently, these grounds for relief should be dismissed as procedurally defaulted.

III.

The Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA") altered the standard of review that a federal court must apply when deciding whether to grant a writ of habeas corpus.  As amended, 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under the current deferential standard of review, a writ of habeas corpus may issue only if the state court's decision is contrary to clearly established federal law or was based

on an unreasonable determination of the facts in light of the evidence.  *Carey v. Musladin*, 549 U.S. ___, 127 S. Ct. 649, 653 (2006); *Williams v. Taylor*, 529 U.S. 362, 379-90 (2000).  Law is "clearly established" only by holdings of the Supreme Court, not its dicta, and the law must be clearly established at the time of the petitioner's conviction.  *Carey*, 127 S. Ct., at 653.

Courts must give independent meaning to the phrases "contrary to" and "unreasonable application of" in § 2254(d)(1):

> Section 2254(d)(1) defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court.  Under the statute, a federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "*contrary to* . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "*involved an unreasonable application of* . . . clearly established Federal law, as determined by the Supreme Court of the United States."

*Williams*, 529 U.S. at 404-05 (emphasis added by the quoting court).  A decision is "contrary to" clearly established federal law if it reaches a conclusion opposite to that reached by Supreme Court holdings on a question of law or if it faces a set of facts materially indistinguishable from relevant Supreme Court precedent and still arrives at an opposite result.  *Id.* at 405-06.  "A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases."  *Id.* at 405.  A decision involves an unreasonable application of federal law only if the deciding court correctly identifies the legal principle at issue and unreasonably applies it to the facts of the case at hand.  *Doan v. Brigano*, 237 F.3d 722, 729-31 (6th Cir. 2001).  The court will examine Woodson's remaining ground for relief using the deferential standard applied to state court rulings on the petitioner's claims.

26

A.    Ground one:  Whether the trial court ruled contrary to or unreasonably applied
      holdings of the Supreme Court in denying Woodson's motion to suppress

Woodson contends that the trial court ruled contrary to or unreasonably applied

Supreme Court holdings in denying Woodson's motion to suppress the evidence

obtained from the stop and search of the automobile in which Woodson was traveling

on the morning of December 29, 2006.  Respondent replies that this claim is not

cognizable in habeas proceedings.

Habeas corpus is not generally available on the ground of a violation of rights

protected by the Fourth Amendment if the petitioner has had an opportunity to present

the Fourth Amendment claims in state courts.  The Supreme Court has held that "where

the State has provided an opportunity for full and fair litigation of a Fourth Amendment

claim, a state prisoner may not be granted federal habeas corpus relief on the ground

that evidence obtained in an unconstitutional search or seizure was introduced at his

trial."  *Stone v. Powell*, 428 U.S. 465, 494 (1976).

The determination as to whether a petitioner has had "an opportunity for full and

fair litigation of a Fourth Amendment claim" requires a habeas court to take two steps:

> Initially, the district court must determine whether the state procedural
> mechanism, in the abstract, presents the opportunity to raise a fourth
> amendment claim.  Second, the court must determine whether presentation of
> the claim was in fact frustrated because of a failure of that mechanism.

*Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982) (citations omitted).  The Sixth Circuit

has determined that "[t]he mechanism provided by the State of Ohio for the resolution of

fourth amendment claims is . . . clearly adequate."  *Id.*  All that is needed, therefore, is to

determine whether presentation of the claim was in fact frustrated because of a failure

of that mechanism.

The evidentiary hearing required by *Stone* is the sort contemplated by *Townsend v. Sain*, 372 U.S. 293 (1963), *rev'd on other grounds by Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992) 392 U.S. 293.  *See Riley*, 674 F.2d at 526.  Such a hearing mandates factual determinations fairly supported by the record and a factfinding procedure adequate for reaching reasonably correct results.  *Townsend*, 372 U.S. at 316.  In reviewing such an evidentiary hearing, federal courts must presume "that state courts are as capable of deciding fourth amendment issues as federal courts" absent "egregious error in the application of fourth amendment principles . . . ."  *Riley*, 674 F.2d at 526.

In the instant case, Woodson concedes that "the state's procedural mechanism, in the abstract, presented 'the opportunity to raise a fourth amendment claim.'"  Traverse at 16.  He asserts, however, that the court failed to apply the proper legal standard in determining whether Baskerville's continued detention of Woodson beyond the time necessary to issue the speeding ticket was legally justified.  According to Woodson:

> An officer may stop and detain a motorist so long as the officer has probable cause to believe that the motorist has violated a traffic law.
>
> But any further detention is beyond the scope of the *Terry* stop and illegal unless the officer has a reasonable suspicion of other criminal activity or the individual consents to further detention.  "A seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if prolonged beyond the time reasonably required to complete that mission."  The Fourth Amendment does not require reasonable suspicion to justify using a drug-detection dog as long as the traffic stop and detention are not unlawful or improperly extended.  "But "[o]nce the purposes of the traffic stop [have been] completed, a motorist cannot be further detained unless something that occurred during the stop caused the officer to have a reasonable, articulable suspicion that criminal activity was afoot.

28

Traverse at 11 (citations omitted).  In sum, Woodson is not asserting a failure of Ohio's mechanism for resolving Fourth Amendment claims but egregious error in the application of the law.

In arguing that the court applied the wrong standard, Woodson does not discuss the court's explanation of its decision to deny Woodson's motion to suppress.  The court stated:

> The officer . . . made an appropriate stop.  He had probable cause to make a stop for a traffic stop.  He immediately saw information, which in the totality of the circumstances, would indicate to him -- I think he had probable cause as soon as he sees all of this, as soon as he sees the blunt being emptied out.  I think that's probable cause.  Even if it wasn't probable cause, it's clearly enough for an investigative stop at that point.

Transcript of Suppression Hearing, attached to Return/Answer, pp. 83-84.

The trial court used the very standard that Woodson articulates as the proper standard for determining if the search subsequent to the stop was proper.  That is, the court determined that after making the stop, the officer observed behavior that gave him probable cause to believe that criminal activity might be occurring.  The court also noted that "probable cause" was beyond what was necessary for an investigative stop (*i.e.*, reasonable suspicion).  While Woodson might disagree with the court's conclusions, he cannot fairly argue that the court applied the wrong standard.

Woodson concedes that the state's procedural mechanism, in the abstract, presented the opportunity to raise a fourth amendment claim, and he fails to demonstrate that presentation of the claim was in fact frustrated because of a failure of that mechanism or that the court committed egregious error in applying the law.  Consequently, Woodson fails to show that he did not have a full and fair opportunity to

29

present his claims in state court.  He may not, therefore, be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial.  Woodson's first ground for relief should be dismissed as not cognizable in federal habeas proceedings.

IV.

For the reasons given above, Woodson's second, third, fourth, fifth, and sixth grounds for relief should be dismissed as procedurally defaulted.  Woodson's first ground for relief should be dismissed as not cognizable in federal habeas proceedings.


Date:  July 21, 2010                    /s/ Nancy A. Vecchiarelli
                                        United States Magistrate Judge

**OBJECTIONS**

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn,* 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111.**

30